Case today is ABC against CCAC and Plumboro. Mr. Mitchell. Brandon. Right? Which case they cleared the article freestanding hurt. District Court was wrong to insist that arrow make an independent showing of article freestanding because only one plaintiff needs to show or even allege article free. No, we don't believe it is your honor. There are some cases that we acknowledge in our reply brief that predate little sisters of the poor that suggested that one plaintiff rule is discretionary. But if the if the court is to look at footnote six in Little Sisters from 2020 in the Supreme Court, the court was emphatic that the Third Circuit erred in Little Sisters by independently inquiring into the standing of other parties when that party was still. It wasn't just other parties, though. It was it was the standing of an intervener. Right, right. So why should that extend to any plaintiff who is not an interviewer? There's no principle difference in our view, Judge Freeman, between the situation of an intervener and the situation of a coplaint if if they're seeking the same perspective relief. Because if there's no basis to demand that the intervener independently demonstrate article freestanding when it's undisputed that there's a party to the case that has article freestanding, there can't be any basis for treating a coplaint differently, at least in our view. OK, well, do you do agree that the one good plaintiff rule, to the extent that it applies, would apply only with regard to equitable relief and not with regard to damages? I believe that is correct, because damages will always be a plaintiff specific request. So what is the difference if some plaintiffs are left in the case and if the district court found they have standing and if we agree with that, then why? Why does it matter whether an additional plaintiff would be seeking duplicative? It may not matter at the end of the day because the remedy that all these plaintiffs are seeking is the same, as your honor points out. So if we are successful in the end of this litigation, we will obtain a remedy that should protect our electric no less than it would protect the other plaintiffs, because we're asking the court to issue a declaratory judgment. But why don't you address why the contractors, all of the contractors, including Harrow, yes, have standing on the First Amendment claim? Right. So this is an issue that the appellees have raised in their brief, which we prevailed on in the district courts. So why don't you? I will. Why don't you address that? Your honor, they have alleged Article 3 standing, which is all we need to do at this stage of litigation. Alleged because this is the motion to dismiss. And what we've alleged in our complaint is that the contractors are not able to obtain work from Plumboro or from the Community College of Allegheny County because they're not willing to comply with the conditions of the Project Labor Agreement. And that's more than sufficient. Where does the First Amendment claim come in? The First Amendment claim comes in with respect to Janus. So Janus holds that compulsory payment of union dues is not permitted in the public sector, nor is compulsory union membership. And what we've alleged in our complaint is that the union hiring hall referral system. They said we're not going to bid. They are going to bid. That's correct. Because there's not a question of dues. That's correct. And that's injury in fact. So they're not willing to bid because they're not willing to comply with the terms of the Project Labor Agreement. That's injury in fact. Whether they're suffering a violation of the First Amendment rights goes to the merits of the case. But we've surely cleared the Article 3 standing hurl because all we need to show at that stage of the litigation is some type of identifiable trifle under scrap. The defendants. Your allegations of the complaint about payment of union dues and membership in the union are directly contradicted by the agreement that you attach to the complaint. So so our president says that we have to we have to look to the agreement when there's a disparity. Your Honor, I respectfully disagree that they're contradicted by the attachments of the complaint. The attachment of the complaint contains the Project Labor Agreement. There's a provision in the Project Labor Agreement that says that the unions are not permitted to discriminate against non-union members when it comes to referrals to the union hiring hall. We acknowledge that is in the agreement. But we've alleged in our complaint that that's a sham because the unions don't comply with that. But you just you just you didn't state any facts other than that. You said they discriminate. Right. But you didn't say you didn't say ABC individuals were non-non-union members and they were discriminated against. You didn't give us anything other than a conclusory assertion. That's right. At this stage of litigation, though, all of our factual allegations need to be accepted as true. And, Your Honor, I respectfully disagree with your characterization of this as a conclusory assertion. Conclusions, a legal conclusion would be they're violating our First Amendment rights. This is a factual allegation. But, you know, if your factual allegation is, you know, the defendant discriminates like that, that does, you know, Iqbal and Twombly make fairly fairly clear that that you do have to provide some specific fact where we can where we can assume that that you can presume that you can prove that through discovery other than just just probably stating it. Judge Freeman, Iqbal and Twombly both say that detailed factual allegations are not required at the motion to dismiss. This is not like Pennsylvania state courts where we do have to provide fact pleading. We just need to provide enough factual detail to put the defendant on notice of what this claim is about. We eventually will have to prove it. We can't just win our case with a bald assertion. We agree. But that comes later after discovery. To get past a motion to dismiss, all we have to do is allege in our complaint that the unions are operating this system in a way that is depriving our clients of their First Amendment rights. Maybe we're wrong to allege that. That'll all come out in discovery. But at this stage of litigation, everything we assert in our complaint has to be accepted as true. It's not stipulate for a minute that the unions do discriminate. How does that create a First Amendment problem? The First Amendment problem comes, Judge Porter, from the fact that you have to be a union member as a de facto matter to work on these projects. Where's the state action? The state action comes in because Plum Borough is a municipality. The Community College of Allegheny County is a state entity, and they have entered into an agreement with these unions. The agreement doesn't say you need to be a union member. The agreement doesn't say that, but we've alleged, Judge Fisher, in our complaint, that the way these union hiring halls operate is that you will have to be a union member in order to get the referral. So it operates as a de facto union shop, even though they're not explicit about that in the agreement. If I'm a general contractor and I win the bid on the Plum Borough Municipal Building, and as a general, I go out and I need to get a heating and air conditioning contractor. And I choose, you know, Brown Heating and Air Conditioning from Peters Township. And they're a non-union shop. They've got four people that work and do all their work. Okay. Can't those four people work on the job so long as they go through the union hall and get a reference? As we understand the Project Labor Agreement, if, and that's a big if, if they are able to get referrals from the union hiring hall, then yes, they can work on the project. But we've alleged in our complaint... It says they can't discriminate. The agreement says they can't discriminate. The agreement says that. That's correct. But we've alleged in our complaint that that's not how it operates in practice. There are many examples where entities don't comply with the law. Okay, that gets you back to the standing question for the contractors. How does that kind of conduct constitute actual and imminent damage to the contractors? They haven't bid. They didn't bid on the Plum Borough Building job. They're not going to bid. They just don't like the agreement. It sounds to me they ought to be in front of the Pennsylvania General Assembly asking for a law outlawing Project Labor Agreements. Sure, they should be doing that as well. Okay, but the question here is how do you shoehorn this into a First Amendment violation? There are two questions Your Honor is asking. One is the question of standing. I know, I asked them three questions. All right. May I start with standings? I think that has to come first before we get to the merits. Standing comes from the fact that the contractors are unwilling to comply with these conditions. They want to use their own employees on these Project Labor Agreements. They want to use their own employees without having to get them through the union hiring hall. Again, that's enough to meet the identifiable trifle standard. The defendant's brief talks about First Amendment injury. We don't need to show that at the standing stage. All we need for Article III standing is injury in fact. Proving First Amendment injury goes to the merits. That goes into Your Honor's second question. How does it violate the First Amendment? Under Janus, public entities cannot require union membership as a condition of receiving government work. Nor can they require compulsory payments to the unions, the agency shop that Janus abolished. We've alleged in our complaint that the Project Labor Agreement, despite the existence of this non-discrimination clause, actually operates as a de facto union shop because in reality, the unions will not provide referrals through their hiring halls to non-union members. That means in order to get work from Plum Borough or to get work from the Community College of Allegheny County, you will need to be a union member because that's the only way you can get a referral through the union hiring hall. Again, that's the allegation of the complaint. It hasn't been proven yet because we're still at the motion to dismiss stage and we haven't gotten to discovery. But Janus says you can't require payments to the union, but it still leaves open the possibility that the unions could be the exclusive bargaining agent. That is right. And we're not saying in any way that that would violate Janus. There may be some argument that someone could make in the future that attacks the constitutionality of exclusive representation, but the Supreme Court did make clear in Janus that issue remains open and they have not granted certiorari yet to consider that question. So explain again how the arrangement here, in your view, violates Janus. We've alleged that the unions won't provide referrals through their hiring halls unless you become a union member. So it therefore operates as a de facto union shop. Obviously, they're not making this explicit in the agreement. That would be crazy because they'd be admitting not only a violation of the First Amendment, but a violation of the National Labor Relations Act. Presumably, if you had any specific examples of non-union members who were discriminated against, you would have taken the opportunity to amend your complaint when it was offered to you by the district court. We're going to get to that in discovery, Judge Freeman. We will take discovery and see whether there is evidence of that. We don't need to prove that yet at this stage of the litigation because we're simply at the allegation stage, not the proof stage. And I see my time has long expired. If the employee's standing flows through the contractors, does it not? I mean, if the contractors don't have standing, their employees could not have standing. I'm not sure that's right, Judge Fisher. I think it's possible. Could you distinguish? Sure. I think the employees could say to this court or to the district court that as tradesmen, as individual workers, we do not want to go through the union hiring hall in order to have the opportunity to work on a project from Plum Borough or from the community college, regardless of what our employer wants to do. We simply don't want to go through the inconvenience of the union hiring hall. That's enough to meet the Article III standing test. It's a very, very low threshold. It sounds like the same argument that you made, though, for the contractors. It's similar, but I wouldn't say it's identical. You can imagine, I think, a situation in which the contractor might lack Article III standing because maybe he's never going to bid on Plum Borough projects regardless. He just has no interest in working in Plum Borough. But the individual employee might think to himself, someday I may want to work on a Plum Borough project, regardless of what my current employer wants to do. So I don't think it's right to tie the two together. It's possible to imagine scenarios where the employee could have standing, but the employer won't. We started to talk about state action, but I don't think we tied that up. So as I understand it, your position is the PLA creates the rule of conduct, and then where's the joint action, where's the symbiotic relationship? The joint action comes in the agreement between the municipal entity, whether it's Plum Borough or the community college, and the unions, the private entity that agrees to this project labor agreement. So the agreement is a contract between a government entity and a union. That's where state action comes in. There's a lot of contracts between private entities and government entities that don't create state action. But in this case, Your Honor, the government is committing in this project labor agreement to conduct its business a certain way and only allow certain contractors to work on its projects. That, in our view, clearly meets the state action threshold. And Janus is a similar type of situation where there's agreements between the public sector entity and a union to impose this compulsory agency shop agreement. No one doubted there was state action in Janus, even though obviously there was a private entity, the union, that was part of this deal with the government entity. So we don't think there's really any basis to distinguish what we have here in terms of state action from Janus. If I could for a second. Assuming we found that the contractors and the employees had standing under the NLRA claims, to bring the NLRA claim and the antitrust claim, how do you establish the antitrust claim? Antitrust claim is based on price-fixing theory because in the project labor agreement it says that all contractors and subcontractors have to pay the prevailing union wage. That is an allegation of price-fixing. Now, I'm not saying that we have proven price-fixing in our complaint, but we have enough of an allegation to get past the motion to dismiss stage and then the burden would shift to the defendants to show that either this can somehow satisfy the rule of reason, if the rule of reason applies, or if they can get around the per se ban on price-fixing. Typically price-fixing arrangements are subject to a rule of per se illegality under the Sherman Act. Defendants have tried to invoke the non-statutory labor exemption, but the passages we quoted from Connell, that Supreme Court decision from 1976, make clear that the statutory labor exemption is not applicable to these types of agreements because they're not arising out of a collective bargaining agreement. This is an agreement between a governmental entity and a union about how other contractors who are not parties to this agreement have to pay their employees. So this is not something where they can, in our view, hide behind the non-statutory labor exemption that the Supreme Court has recognized. Are there cases requiring you to define the relevant market? I don't think we have to do that in the complaint. In the complaint? No. And I'm not even sure we need to do that at all in this litigation because price-fixing is per se illegal. So if we were trying to pursue a rule of reason claim, we eventually would have to define the relevant market. But even in rule of reason cases, I don't believe that has to be done in the complaint itself. Rule 8 establishes a very generous pleading regime. It's no displeading. It is not the fact-pleading regime of the Pennsylvania state courts. And it's been common for district courts to be throwing complaints out for the supposed failure to plead facts. And that's just not proper in a federal district court, even after Trombley-Nicoll. Detailed factual allegations are not required. And this is also not a regime of code plea. We don't have to spell out the relevant market in the complaint, even though we would have to eventually prove that in order to prevail. One question on the NLRA. Why should we impose the substantive requirements under Section 158 in private parties when Congress consciously excluded the state from the structures of the NLRA? Well, with respect to the NLRA claim, the question would be, is Plum Borough or the Community College of Allegheny County acting as a market participant? And to determine that, the question becomes, would this conduct be legal if it were committed by a private entity? So we're supposed to imagine a hypothetical scenario where a private general contractor entered into this type of an agreement with the union that says all your subcontractors have to abide by these rules and pay prevailing union wages. That's directly what Connell says is not legal under the NLRA, and it's not protected by the statutory labor exemption either. It's not permitted for a union to go to a general contractor and create this type of agreement in advance that all the subcontractors, anyone who contracts with this entity, have to abide by certain union-imposed rules. That's not the proper scope of collective bargaining. That's the union trying to leverage its power to control how other contractors behave, including contractors that it doesn't have a collective bargaining relationship with, such as our clients. But Connell predated Boston Harbor? Yes, it did. Why didn't the Boston Harbor court recognize the Connell argument that you're making? I wish it had. I mean, I wish it had been more explicit on that point, Judge Porter. I think the answer to your question is nobody raised it in the litigation. I don't know whether Boston Harbor would have come out differently.  It is, but so is Connell. And I think the question for the court is, is this more analogous to Connell or is it more analogous to Boston Harbor? And we believe it's Connell because, again, Boston Harbor makes clear the test for the market participant doctrine has to turn on whether this conduct would be legal in the private sector. So if they want to try to say we're market participants under Boston Harbor, what they would need to show is that a private entity entering into analogous agreements would be shielded from liability either under the NLRA or under the non-statutory labor exemption. And Connell makes clear neither one of those will fly in this type of situation in the private sector. All right. We'll hear you on your rebuttal. Thank you, Your Honors. Good morning, Your Honors. May it please the Court. I'm John Newman. I'm here on behalf of the Pittsburgh Regional Building Trades Council and the table is my co-counsel in this case, Joshua Bloom, and my colleague from Sherman Dunn, Jacob Demery. I'm here on behalf of both the Pittsburgh Building Trades Council, also the other at Belize, the Community College of Allegheny County, as well as Plum Borough. I want to set the table for a moment, and we talked about some of the provisions in the project labor agreements, which I'm going to use the shorthanded term PLAs, if that's okay. And there are two at issue here. And they both, I just want to talk about some of their terms, and I don't want it to be lost. They both explicitly provide, and this goes to your question, Judge Fischer, about Brown, I think air conditioning, or the HVAC contractor that you mentioned. They both explicitly provide that they apply to any successful bidder without regard to whether that successful bidder performs work at other job sites on either a union or a non-union basis. So Brown, in your example, can bid. There's nothing preventing Brown from bidding and winning a bid and working under both project labor agreements. The college's PLA states that, quote, no employee covered by this agreement shall be required to join the union or pay any agency fees or dues as a condition of being employed or remaining employed on the project. The Borough PLA contains a very similar provision. And both PLAs, with respect to referrals and the operation of the union hiring halls, state explicitly that the referrals will operate in a non-discriminatory manner without regard to union membership. Now, despite those provisions, the appellants here have alleged that the PLAs violate employees' First Amendment rights under the Supreme Court's decision in Janus because they require, and they've alleged that notwithstanding those provisions, they require employees working under the PLAs to become union members, pay union dues, and interact with the referral halls. If in an employment discrimination case a plaintiff says, employer discriminated against me, at the 12B6 stage, would it be sufficient for the employer to pull out its employment agreement that has the non-discrimination language and say, look, we don't, our employment agreement says we won't discriminate? So this court applies a three-step process for analyzing a complaint in light of a 12B6 motion. Step one is to look at the elements of the claim. And here are the elements of the claim, as alleged by the plaintiffs, are that it's a Janus claim. And under Janus, the elements would be that a state actor compelled one to be a union member or to pay union dues as a condition of employment with, you know, a public entity. Step two then requires the court to analyze the complaint and strip away formulaic recitations of those elements and strip away threadbare, bare conclusionary statements. And I think that when you did what the plaintiffs did here, which is attach the PLAs to the complaint, that it is, they have to be read, that allegation has to be read in context. I would say, number one, it's just a recitation of the elements of the claim. Their claim is, notwithstanding what the PLAs say, they do in fact require union membership. Well, that's just a restatement of what the elements of a Janus claim would be. At best, it's a threadbare allegation in the context of PLAs that say the precise opposite. And the Supreme Court in Twombly said this is a context-specific exercise. So I think the fact that you've attached contracts, that's not that they're silent. It's that they say the precise opposite. And I think, and if I could, I'll go right to state action here. Can you, before you get to that. Sure. Can you tell us why you argue that neither the contractors or the employees have any standing here? Okay. So our brief on appeal, and I think Judge Hardy below said that the First Amendment claim, the only fair way to read the complaint was that the First Amendment claim was a claim on behalf of employees. And so our standing argument here goes to the standing of employees. The allegation is that the PLAs require employees to pay union dues, require employees to interact with unions to obtain employment, and require employees to become union members. That's Janus. So to the extent that the contractors are bootstrapping onto the Janus claim, I would say that they're seeking third-party standing here. There can't be third-party standing. Do you agree that we need to evaluate standing for each plaintiff? Yes. And for each claim? Yes. And did the district court do that in your view? I think they evaluated each plaintiff, but I don't think the district court evaluated each claim. And you would agree that it's possible for a given plaintiff to have standing for one claim in this complaint and not for the other claims? Absolutely. And here we're focused on the First Amendment claim and the employees' standing with respect to that claim. And their claim is that the PLAs, the allegation is, that the operation of the referral halls are such that they have to become union members and they have to pay union dues. And this court in La Spina said that the injury that's predicated on Janus must stem from Janus' core holding. And Janus' core holding is that it's unconstitutional to require somebody to be a union member to pay union dues in order to be a public employee. Here, the employees never suffered that injury, nor will they. They never were required to become members of the unions. They never paid a dime to the unions. They never were required to interact with the unions' hiring halls. Because they never had the opportunity to approach the hiring halls because their contractor employers didn't bid for these. Correct. So how could they ever? And you have a contractor employer who, for association reasons, does not want to bid under the PLA. And they have employees who now will never have the opportunity to apply for work with the college or the borough. Then how could the employees ever show standing? Because I think here, and there's two points, they claim that the harm is the lost job opportunities. But I think this court in Lespina was very clear that the injury in a Janus claim has to be related to Janus' core holding, which is not lost job opportunities. It's the compelled subsidization of a union, the compelled membership of a union. Contractors allege that the PLA would require them to contribute to the union's pension and health care funds. Would that be a Janus injury? No, no. I think that Janus' core holding, number one, is limited to employees. And the subsidization of their union states in the public sector states a First Amendment claim. How is a monetary contribution to pension and health care funds not subsidization? Because it's not subsidizing the union. It is a payment to benefit funds that will provide a benefit to the employees that work under those project labor agreements. It's both union and non-union employees. Yes, absolutely, both union and non-union employees. Do you happen to know whether a non-union employee has ever been referred through these hiring halls? Absolutely, non-union employees would be referred through those hiring halls, particularly with respect to project labor agreements. Through CCAC or Plum Borough? Can you answer that question? That was my question. Yeah. I can't answer that question. I don't know. Certainly, there's nothing in the record, obviously. I do know that the Pittsburgh Building Trades has project labor agreements both in the public and private sector and that contractors that operate on a non-union basis such as your Brown HVAC bid on projects covered by PLAs all the time and work on projects covered by PLAs all the time and those employees are either treated as core employees, there's a core employee provision, or they can certainly seek referral from the hiring halls. If I may, let me turn. We talked about the fact that the plaintiffs did not plead a sufficient claim. I'm going to focus on their First Amendment claim because it was just a recitation of the elements or a threat bearer allegation. But for the sake of argument, let's accept that allegation as true as appellants say that we must. And then analyze at step three of this court's analysis when you're addressing the 12B6 motion, which is have the plaintiffs stated a plausible claim? And appellants contend that their allegations that the unions will not refer non-members, and I'm going to quote their brief, accuses the council-affiliated unions of violating the express terms of the project labor agreements. Accepting that as true, the judgment below has to be upheld because the union's alleged breach of the PLAs cannot constitute state action. The action of the state here was to negotiate provisions that prohibit that very action. And so the private entity's unilateral breach of that provision certainly cannot constitute state action. When you're addressing state action, the question is are unions as private organizations? Is their actions, is it fairly attributable to the state? And they state here, the plaintiff's claim, that the rule of conduct imposed by the PLAs is what creates state action. Well, the rule of conduct is the very opposite of that which they've alleged. The rule of conduct that's set forth in the PLAs is that when making referrals, the unions may not discriminate based on union membership. But aren't they alleging that it's honored in the breach? They're alleging that the unions have breached that promise. They have not alleged that the public entities have. And that the employer or that the owner, that the owner understood that it was breached. That's not even remotely alleged in the complaint. It's not? It is not. There is not a joint action alleged. The reason why there is state action in the Janus line of cases is that both parties are aligned. Both in, you know, pre-Janus, both the public entity and the union were aligned in that there was a requirement that nonmembers pay agency fees. Here the public entities aren't aligned at all with the allegation. The public entities negotiated a specific allegation that said you may not discriminate. And the fact that the public entities sort of, you know, for lack of a better term, deferred or their hiring to the union's hiring halls, certainly doesn't create state action. Nor does the contractual relationship. I think that argument's foreclosed by the Supreme Court's decision in Rendell Baker. And in this court's decision applying Rendell Baker in black. Those cases squarely reject the notion that state action is created by virtue of a contractual delegation from the state to a private party. Mr. Nimmit, if these contractors and employees, based on the allegations they have made in their complaints, do not have standing, who could have standing? A non- To bring an action. A non-union. I told you there's non-union employees that work under these project labor agreements all the time. A non-union employee whose contractor bid on the PLA who goes down to the, you know, local union hiring hall and is told, you got to be a member. We're not referring to you. Sorry. Turn around. Certainly they've suffered an actual injury. Or I would say even if the non-union employee's contractor had bid on those projects, does bid on those projects, was able to demonstrate that they will bid on those projects. In that instance, perhaps there's an imminence argument for future injury. Here we have in the record declarations from the contractors that say they will not bid on projects covered by PLAs. So these employees don't have any prospect of a future injury. It's not going to happen. And they haven't suffered any actual injury because they haven't worked under the PLAs. Let me turn to the antitrust claim, if I may, for one moment. Well, just moving back to it, would the plaintiff's employees, tradesmen, also establish standing if their employers had bid and received a contract under the PLA? They went down to the hiring hall. They just were not referred to- Yes. And so they can allege, well, my employer wanted to hire me, but the union didn't refer me. They didn't explicitly say- I think so, yes. You must be a union member. Yes. It's a very different case. Okay. Yes. They would be alleging- Let me ask a question that the appellants raised in footnote one in their reply brief. If we agree with your position and find there was no standing here to bring this, is their statement that we should direct the district court to dismiss this case without prejudice accurate? Yes. So- I don't take issue with that. This case could be repackaged and be back here again. They'd have to amend. They'd have to amend. They'd have to, you know, consistent with rule 11. We don't think they can do that. Okay. But you agree with footnote one? I don't take any issue with footnote one. Okay. I see that my time expired. It's okay. Is it okay? Do you have something more to say? I do. I have a lot more to say, but I will be cognizant of the court's time. I do want to address one aspect of the antitrust claim, and that is the lack of antitrust standing, which I think is very, very clear in this case. The fundamental flaw with their antitrust argument is that the PLAs do not exclude anyone from competing. All they do is set the terms for the competition. And here, the contractors don't like the rules of the competition, so they refuse to play. And then they bring an antitrust action, and they claim our refusal, unilateral refusal to play, constitutes harm that enables us to bring an antitrust claim. The harm that they impose on themselves is not the requisite antitrust injury required to demonstrate antitrust standing. They have to allege an injury to competition that affects prices, quantity, or quality of goods and services. And this court recognized very recently in Hoste, and I'm going to cite it because it's not in our brief, 32F4242, that one party weighing the terms of a potential contractual relationship that doesn't like those terms and walks away from the potential relationship is a scenario that plays out across the nation daily, in transactions big and small, but it is not an antitrust injury because competition has not been suppressed. And that's exactly the scenario here. You've got contractors that could have bid but chose not to, and whatever harm they claim they suffer by their own actions is not sufficient antitrust injury to demonstrate antitrust standing. Your friend says that Connell precludes the market participant doctrine, as it were, because these don't arise out of a preexisting collective bargaining relationship. What do you say? Well, the market participation doctrine goes through the NLRA claim. And this court is very, very clear in Sage Hospitality what the test is to determine whether the public entity is acting as a market participant. In this case, it's a two-part test. In this case, it would be two questions. Do the PLAs serve the public entity's proprietary interest? Public entities are the owners of what is being built. I don't think there can be anything more proprietary than owning property. The second part of the test is are the PLAs limited to that proprietary ownership interest? Yes. That is the market participant sort of elements, but what about the Connell argument? The Connell argument, I think, goes to the, well, I guess it really goes to the antitrust argument, but I'll address it with respect to the NLRA argument. And what they're, as I understand their argument, they're saying that the Boston Harbor court said that the public entity's conduct has to be analogous to that in the private sector. And in here, it can't be under Connell. So I'll say two things about it. Number one, analogous does not mean identical. So two different words. And they are arguing that it does, number one. Number two, the Ninth Circuit has addressed that issue squarely in the Johnson case cited in our brief that if direct participation becomes regulation whenever a private party cannot participate in the identical manner, then the court would be subjecting state employers that are excluded from the coverage of the National Labor Relations Act to the coverage of the National Labor Relations Act. The third thing I'll say is that Connell is a completely different case. Connell is not a project labor agreement. A project labor agreement is a unitary labor agreement that covers all contractors working on the project, that covers all unions, all crafts working on the project. In Connell, the agreement was with one craft, and it precluded non-union contractors from working under that agreement, you know, with a general. It was a contract with a general contractor that said, we're not interested in representing your members. When you subcontract to our craft and only our craft, you have to do it with a contractor that's signatory to us. That's wholly different than a PLA. And the Supreme Court said that the proviso to Section 80 under the National Labor Relations Act does not cover that when they called it a unique organizing instrument. PLAs are totally and completely different. They are used in the private sector every day. And Boston Harbor recognized that a public entity should have that same tool available to it. Thank you. Thank you. Thank you. Your Honor, Judge Freeman asked Mr. Newman whether standing, Article III standing, should be assessed in a claim-specific manner. And I think the answer to Your Honor's question is subtle. On the one hand, absolutely the Supreme Court has made clear that standing has to be assessed, claim by claim, litigant by litigant. But in this particular context, an Article III injury for purposes of our Janus claim is also Article III injury for purposes of any other claim we assert in this case when it comes to prospective relief. Injury in fact is a factual question. There's nothing that would qualify as injury in fact for purposes of a First Amendment claim that wouldn't qualify as injury of fact for an antitrust claim or for an NLRA claim. Where I do think the distinction matters is in the distinction between prospective relief and the claims for damages. And this is something that was at issue in the district court opinion that hasn't been discussed yet at oral argument because in the Plum Borough case, the district court allowed our clients to seek damages but would not allow us to seek prospective relief. And those are different inquiries. Injury for purposes of damages is going to be very different from injury for purposes of prospective relief where you get prospective relief and you need to show a future injury rather than a past injury. It has to be actual and imminent. Actual and imminent, yes. So it doesn't work to say, well, Plum might have a project a decade from now, right? Or five years from now. These are always difficult questions to answer, Judge Porter, because this actual and imminent standard, as I'm sure the Court knows, is not applied in a manner that would be a paragon of consistency by the Supreme Court of the United States. And sometimes they will allow speculative. Where would you draw the line? I do the best I can with what the Supreme Court has given us. And also in the role I've been given as an advocate for my particular client. So in representing a plaintiff, I would always try to rely as heavily as I could on the Supreme Court decisions like Massachusetts against EPA that seem to say that the increased risk of a possible future injury is enough. But I realize you can throw back in my face other cases from the Supreme Court, like Clapper, that say you need to show this injury is likely to happen. So it's a very difficult question. I don't think the Court needs to get into all that here, though. Because what we've alleged, again, we're still at the motion-to-dismiss stage. We have alleged in our complaint that Flomborough is imposing this and will continue to impose this type of project labor agreement on future projects unless and until it is enjoined by this Court from doing so. And that has to be accepted as true, at least right now. Later on, if it turns out in discovery that it's a more complicated question factually, then I think it will raise some of these interesting questions that you're asking about, just how immediate and how imminent does this supposed future harm have to be. But this is we have to play the hand that the Supreme Court has given us. And the case has really pulled in both directions on this point. Judge Porter, you also asked Mr. Newman about whether it's factually true that union hiring halls have referred nonmembers. And with all respect, we don't think that's appropriate to consider right now. Because, number one, as Mr. Newman acknowledged, none of this is in the record. But, number two, even if it were, this is not the right place to be resolving factual questions. We're still at the 12B6 stage where all allegations of our complaint have to be accepted as true. And we've specifically accused the defendants in our complaint of violating the nondiscrimination provision that we acknowledge appears explicitly in the project labor agreement. It is no defense to that allegation to point to the mere existence of the nondiscrimination agreement and ask this court to assume as a factual matter that it is indeed being complied with. How is it different from the cases where it is appropriate to disregard a factual allegation because of a provision in an attached complaint or document? If there's an actual contradiction, then your honors can disregard the allegation of our complaint. But there is no contradiction here because we've acknowledged in our complaint that this nondiscrimination provision exists, but we say that it's not being complied with. All the exhibit shows is the existence of that nondiscrimination complaint. If we had attached to our complaint an exhibit that proved as a factual matter that the unions always obey the nondiscrimination provision, then there would be a contradiction between the allegations of our complaint and the exhibits attached. There is no such contradiction here. And for a similar reason, if we shift gears to Plum Borough, there's no contradiction between the allegations of our complaint and the fact that the attachment is limited to the municipal building that Plum Borough is currently building. The district court called that a contradiction, but we respectfully believe the district court was wrong. There's just no contradiction at all. We've alleged in the complaint Plum Borough applies the project labor agreement to many different projects. And we attach to our complaint one example of that. That's not – I'm sorry, go ahead. They would have to – because the example you attached applied to one particular project, they would have to come up with a new PLA for future projects, right? Well, we've alleged in our complaint that that's what they're doing, right? So the court has to assume the truth of that allegation at the 12v6 stage, at the 12v1 stage. Why could you not sue when they come up with that new PLA for the new project? We could, but there's nothing stopping us from suing now because we've alleged that they continue to use project labor agreements and they will continue doing so in the future until they're enjoined. But where's the actual and imminent – where's the proof of actualness? Yeah, actual and imminent. Yeah, so the actual and imminent injury comes from the fact that our clients right now today cannot get work from Plum Borough unless they agree to comply with the terms of these PLAs. As far as we know, there's no work to be had, right? The one PLA that you pointed to, that contract period is closed. That's correct. So we can still seek retrospective relief with respect to that particular project. But when it comes to projects – I'm sorry. Perspective relief. I'm asking about perspective relief. Yes, so I believe Your Honor's question is how do we show in the complaint that we have standing to seek forward-looking relief against Plum Borough when we haven't identified in detail in the complaint what these future projects will be and what type of project labor agreements will be attached? And again, Your Honor, I'm going to come back to the rules of notice pleading. We just don't need that level of detail at this stage of the proceedings. We eventually will need to prove to survive a motion for summary judgment that Plum Borough is in fact imposing project labor agreements in a manner that inflicts actual and imminent injury on our client. We will have to show that to survive a motion for summary judgment. We will certainly have to prove that by a preponderance of the evidence to ultimately win this case. But right now, at the pleading stage of this litigation, all we need is allegations to survive a motion to dismiss. And we have allegations in our complaint that are sufficiently detailed under Plumblee and Iqbal. Plumblee says detailed factual allegations are not required. This is not Rule 9B. We're not alleging fraud or mistake. We don't need to plead this with particularity. We just need the allegation that's sufficient to put the defendants on notice of what our claim is about. And that's what we have more than met the standard. Doesn't that argument only apply to the NLRA and antitrust claims? Not with respect to standing, Judge Fischer. We believe the injury in fact... As perspective relief. As a perspective relief. Doesn't your argument only hold water as to the NLRA and antitrust claims? Is Your Honor asking about the Article 3 standing question? Yes. Or the merits? On that argument you just made. With respect to standing? That gives us standing on all the claims. Because all we need to show is an injury in fact. And that gives us standing to seek perspective relief on any legal theory. Whether a legal theory is sound goes to the merits. That's the 12B6 question. So we may have pleaded a deficient legal theory. Again, that's not the ground on which the district court dismissed. He said we didn't plead enough factual detail. But with respect to standing, if we show injury in fact, any type of injury, that gives us standing to seek perspective relief on all the claims. Antitrust, NLRA, First Amendment, Janus, Compelled Association, the whole thing. Mr. Newman suggested that the contributions to the pension and health care funds are not Janus type injuries. What do you say? I think, again, that's a merits question, Judge Porter. We didn't make a specific allegation that that violated Janus itself. It certainly gives the employers Article 3 standing, in our view, because they would have to contribute money to the unions in order to work on these projects. That's injury in fact. Does it violate the First Amendment under Janus? I'm not sure. Janus says you can't force an employee. A tradesman to pay money to the union as a condition of working on projects. This sounds like it's a somewhat different situation. You're requiring the employer to pay the money. But he is doing it on behalf of his employees. Maybe there's an argument that Janus could be extended in this situation. I guess the way I would answer your Honor's question is I don't think Janus compels the conclusion that it violates the First Amendment. But it's possible, given the principle of Janus, that one could plausibly argue that. And we haven't yet decided whether we're going to pursue that type of argument in this case. Happy to answer any other questions your Honors have. But otherwise, we respectfully ask the Court to reverse and remand for further proceedings. Thank you. Thank you.